UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 17-10043-RGS

B2 OPPORTUNITY FUND, LLC

v.

NISSIM TRABELSI ET AL.

ORDER ON PLAINTIFF'S MOTION FOR
A PRELIMINARY INJUNCTION

March 30, 2017

STEARNS, D.J.

Plaintiff B2 Opportunity Fund, LLC, seeks a preliminary injunction against defendant Nissim Trabelsi and a raft of affiliated entities.[1] For the following reasons, the court grants the preliminary injunction.

BACKGROUND

The Complaint's central allegations against Trabelsi can be briefly summarized. In February of 2016, B2 agreed to buy stock in Znergy, Inc., from Trabelsi. The stock purchase agreement prescribed that B2 would pay

---

[1] In full, the defendants covered by this motion are Nissim Trabelsi, individually and as trustee of the Mazzal Trust (also known as the Mazzal Living Trust) and The Bany's Living Trust; Aliza Trabelsi, Nissim's wife, individually and as trustee of The Bany's Living Trust; Mazzal Holding Corp., a Massachusetts corporation; and Magnolia Road, LLC, a Massachusetts limited liability company. For obvious reasons, the defendants are referred to throughout as "Trabelsi."

$315,000 for 45.8 million restricted shares held by Trabelsi and 9.5 million additional free-trading shares held by "Shawn Telsi." Trabelsi held out Telsi as his brother-in-law, but Telsi was in fact Trabelsi acting under an adopted name. Instead of transferring the shares as agreed, Trabelsi transferred 9.5 million of the 45.8 million restricted shares into Telsi's name, and then transferred those shares to B2's assignees, representing them to be the free-trading shares. Following this misdirection, the lawyers managing the escrow account for the deal transferred the $315,000 purchase price to Trabelsi.[2] B2 alleges that, based on market transaction activity and the fact that only about 12 million free-trading Znergy shares exist, Trabelsi then sold a large proportion of the free-trading shares after news of the purchase agreement lifted Znergy's stock price. When B2 uncovered the deception in March of 2016, Trabelsi allegedly engaged in a series of evasions designed to obfuscate the nature of the fraud.

B2 filed this suit on January 10, 2017, and requested a preliminary injunction just days later. B2's Complaint lodges claims of securities fraud and common-law fraud, conversion, violations of the Massachusetts consumer protection statute, breach of contract, and unjust enrichment. It

---

[2] B2 has also sued the lawyers in charge of the escrow account, but is not seeking injunctive relief against them.

also seeks a declaratory judgment regarding ownership of the free-trading shares and certain property in Taunton, as well as specific performance of the agreement.

On February 6, 2017, B2 sought a temporary restraining order from this court, asserting that market trading activity indicated that Trabelsi was liquidating the free-trading shares still in his possession. That order was granted after a hearing on February 10, 2017. The TRO enjoined Trabelsi from alienating shares, disposing of the proceeds of sales of Znergy stock up to an amount of $315,000, or destroying any records related to his transfer of shares. Dkt. #29. The court also gave Trabelsi the option of posting a bond in the amount of $315,000. *Id*. By agreement of the parties, the TRO remained in force until Trabelsi answered and the court ruled on the preliminary injunction request. Dkt. #42, 43.

B2 requests three alterations to the TRO. First, it asks that the court increase the limitation on Trabelsi's ability to dissipate sale proceeds of the free-trading shares from $315,000 to $599,022, which represents B2's best estimate of the total proceeds Trabelsi has received from the sale of the free-trading shares to date. Second, B2 requests that the court forbid Trabelsi from transferring a certain parcel of property in Taunton, Massachusetts, or from alienating any proceeds he has received from a sale which has already

taken place. Finally, it asks not only for an extension of the document preservation order, but also that the court permit expedited third-party discovery and require Trabelsi to provide documentation of his sales of the free-trading shares.

The court heard arguments on the motion on March 30, 2017.

## DISCUSSION

A request for a preliminary injunction is evaluated under a familiar four-part rubric: "trial courts must consider (1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 15 (1st Cir. 1996).

B2 prevails on each of these factors. Without considering all of B2's counts, on this record B2 is likely to succeed on at least its securities fraud, common-law fraud, and breach of contract claims. Trabelsi admitted, first in his briefing on the TRO and subsequently in his answer to the Complaint, that he sometimes uses the name Shawn Telsi in transactions. *See* Dkt. # 27, Ex. A, ¶ 10; Defs.' Answer, Dkt. #66, ¶ 8. Despite this admission, documents

attached to the Complaint indicate that Trabelsi repeatedly pretended that Telsi was his brother-in-law and offered a series of excuses to explain why Telsi was unable to effectuate the transfer of the free-trading shares. *See* Dkt. #1, Exs. R, T, X. Trabelsi's effort to induce B2's reliance on representations about "Shawn Telsi," breach of the contract by transferring restricted shares masquerading as free-trading shares, and deliberately deceptive behavior in connection with the sale of securities demonstrates a likelihood of success on these claims.

B2 has also demonstrated irreparable harm. Typically, irreparable harm is not present where money damages are sought, because a party can always be compensated for monetary losses. *See Ocean Spray Cranberries, Inc. v. PepsiCo, Inc.*, 160 F.3d 58, 61 (1st Cir. 1998). Even if money damages could make a plaintiff whole, however, irreparable harm exists "where there is a strong indication that the defendant may dissipate or conceal assets." *Micro Signal Research, Inc. v. Otus*, 417 F.3d 28, 31 (1st Cir. 2005). Here, B2 has presented evidence indicating that Trabelsi not only engaged in a fraud with respect to the initial transfer of the free-trading shares, but has also made substantial efforts to rid himself of shares still in his possession after B2 sought injunctive relief. *See* Dkt. #16, Exs. A, B; Dkt. #23, Ex. A.; Dkt. #70, Exs. A, B.

The balance of hardships also favors B2. The requested injunction primarily targets proceeds from the sale of specific shares at issue in this suit, and therefore merely requires Trabelsi not to dispose of gains which, for now, appear ill-gotten. In addition, an injunction benefits B2 by preventing any further dissipation of assets. Trabelsi has not identified any serious burden to himself or any harm to the public interest from entering an injunction respecting the free-trading shares.

The considerations outlined to this point support converting the TRO currently in force into a preliminary injunction. They do not, however, warrant the enhancements B2 requests. First, under the purchase agreement, B2 agreed to buy the free-trading shares for $315,000, so nothing more is required to return B2 to its pre-breach position, which is all that equity requires.

Second, there is no apparent reason to include the Taunton property in the injunction. Neither B2 nor Znergy was entitled to the property under the contract, and B2 has remedies at law for Trabelsi's apparent breach of that agreement. Finally, discovery regarding the disposition of the free-trading shares can proceed in the normal course. B2's litigation interests are sufficiently protected by Rule 37, the court's inherent powers, and the terms

already present in the TRO, which strictly forbid Trabelsi from destroying any records or other evidence relating to the free-trading shares.

The court will, however, make one alteration to the TRO to respond to a request B2 made at the hearing on this motion. The court will specifically enjoin Trabelsi in his capacity as an officer, manager, or director of Magnolia Road LLC and Mazzal Holding Corp., two Massachusetts entities apparently controlled solely by Trabelsi. *See* Compl. ¶¶ 13-14, 24-25.

## ORDER

B2's motion for a preliminary injunction is <u>ALLOWED</u>. A signed preliminary injunction order will be filed with this opinion.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE