UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 17-10043-RGS

B2 OPPORTUNITY FUND, LLC

v.

NISSIM TRABELSI ET AL.

MEMORANDUM AND ORDER ON
MOTIONS TO STRIKE AND MOTION FOR LEAVE
TO ADD A COUNTERCLAIM DEFENDANT

June 29, 2017

STEARNS, D.J.

A group of defendants in this case (the "Trabelsi Defendants")[1] attempt to assert counterclaims against plaintiff B2 Opportunity Fund, LLC, as well as crossclaims against co-defendant C. Parkinson Lloyd, by way of their answer to plaintiff's Amended Complaint. B2 and Lloyd have moved to strike. After the motions to strike were filed, counsel for defendants sought leave to add a non-party to the case as a defendant on the counterclaims. The

---

[1] The "Trabelsi Defendants" encompass Nissim Trabelsi individually and as trustee of Mazzal Trust and The Bany's Living Trust; his wife, Aliza Trabelsi, individually and as trustee of The Bany's Living Trust; Mazzal Holding Corp.; and Magnolia Road, LLC. All of these defendants are represented by the same counsel for purposes of this order.

court will grant the motions to strike and deny the motion for leave to add a non-party.

BACKGROUND

The court will not recite the factual background to these claims, which can be found in brevis form in a prior order. *See B2 Opportunity Fund, LLC v. Trabelsi*, 2017 WL 1196645 (D. Mass. Mar. 30, 2017). Instead, the court will focus on the procedural history of this case.

The Trabelsi Defendants sought and received three extensions to file their initial answer. *See* Dkt #14, 38, 50, 51, 61, 63. One of those requests indicated that the Trabelsi Defendants intended to file counterclaims along with their answer. *See* Dkt #50 at 2. Counsel filed a fourth request for an extension after the close of business the day the answer was due, *see* Dkt #64, but ultimately filed the answer that day, *see* Dkt #66. That answer contained no counterclaims. After co-defendants filed motions to dismiss, B2 amended its Complaint as of right under Rule 15(a)(1)(B). *See* Dkt #77. Despite the fact that the new allegations in the Amended Complaint were chiefly directed at the co-defendants, the Trabelsi Defendants again sought and received a total of four extensions to file an answer to the Amended Complaint. *See* Dkt #84, 85, 89, 90, 99, 100, 105, 107. In granting the third extension, the court warned the Trabelsi Defendants that "[n]o further extensions . . . should be

expected," Dkt #100, and flatly told the Trabelsi Defendants in granting the fourth and final extension "[n]o further extensions," Dkt #107. Nonetheless, counsel for the Trabelsi Defendants sought a fifth extension, which this court denied. *See* Dkt #108, 111. The answer to the Amended Complaint was finally filed on May 17, two days after the original deadline and one day after the court denied the extension.

The Trabelsi Defendants' answer to the Amended Complaint, when finally filed, contained eight paragraphs of factual allegations supporting six claims against B2, B2 CEO Peter Peterson (a non-party), and C. Parkinson Lloyd (a co-defendant). In response, B2 moved to strike the counterclaims on a variety of grounds. It first argues that any counterclaim was waived because the Trabelsi Defendants failed to file it with their original answer. Second, it contends that the failure to timely file the answer in accordance with the court's deadlines bars the counterclaims. Third, it suggests that the Trabelsi Defendants were required to seek leave of court to file the counterclaims under Federal Rule of Civil Procedure 15(a)(2), and that even if leave was sought, it should be denied. Fourth, it contends that to the extent that the counterclaims are directed at Peterson, a non-party to this action,

the claims are not really counterclaims at all, but efforts to implead a third party under Federal Rule of Civil Procedure 14.[2]

After B2 moved to strike, the Trabelsi Defendants moved for leave to add Peterson as a party, providing no argumentation but citing Rules 13, 14, and 15(a)(2), as well as Local Rule 15.1. The motion provides only that the requested relief "is necessary to a fair and equitable understanding of the merits of the Defendants-in-Counterclaim." Dkt #119 at 2. Shortly thereafter, Lloyd likewise moved to strike the crossclaims against him, asserting the same arguments about untimeliness and futility raised by B2. He also contends that the court lacks personal jurisdiction over him.

## DISCUSSION

Untangling this procedural mess is more complex than it need have been. The Trabelsi Defendants attempt to assert the counterclaims as compulsory counterclaims pursuant to Federal Rule of Civil Procedure 13(a)(1)(A). This leads to two interrelated questions. First, have the Trabelsi Defendants waived their counterclaims against B2 by failing to file them in response to the original Complaint? Second, if they are not irrevocably

---

[2] B2 also contends that the Trabelsi Defendants have failed to comply with Local Rule 15.1(b). The court does not reach this issue.

waived, do the Trabelsi Defendants require leave of court to assert them in response to the Amended Complaint?

The first question has a relatively straightforward answer. Although "[a] pleading must state as a counterclaim any claim that — at the time of its service — the pleader has against an opposing party," Fed. R. Civ. P. 13(a)(1), a party may always seek leave to add an omitted counterclaim. Until 2009, that fact was embodied in Federal Rule of Civil Procedure 13(f), which permitted the belated assertion of a counterclaim omitted "through oversight, inadvertence, or excusable neglect or if justice so requires." The Rule was eliminated in 2009, however, because of a lack of clarity about the relationship between Rule 13(f) and Rule 15. After Rule 13(f)'s abolition, Rule 15 became "the sole rule governing amendment of a pleading to add a counterclaim." Fed. R. Civ. P. 15 advisory committee's note to 2009 amendment.

This fact, however, does not resolve the question of whether the Trabelsi Defendants must have leave of court to belatedly assert their counterclaims in response to the Amended Complaint, and that issue is rather surprisingly up in the air. *See Bern Unlimited, Inc. v. Burton Corp.*, 25 F. Supp. 3d 170, 177-180 (D. Mass. 2014) (describing two common approaches before setting out on a third course). Here, however, the court

need not wade into the merits of the varying approaches. Even if the Trabelsi Defendants might have been able to assert the counterclaims without leave in response to B2's Amended Complaint, they forfeited that right by failing to abide by this court's deadlines. The motion for leave to add Peterson as a defendant on the counterclaims likewise supports treating the proposed counterclaims as requests for leave to amend. The court will therefore analyze the Trabelsi Defendants' request to add counterclaims against B2 and Peterson[3] under Rule 15(a)(2).

Similar principles govern the proposed crossclaims against Lloyd. Lloyd does not contest that the crossclaims "arise[] out of the transaction or occurrence that is the subject matter of the original action." Fed. R. Civ. P. 13(g). Although the Federal Rules place no time limits on crossclaims, "[t]he decision whether to allow a crossclaim that meets the test of [Rule 13(g)] is a

---

[3] Although B2 suggests that the Trabelsi Defendants are attempting to improperly implead Peterson under Rule 14, Rule 13(h) provides that "Rules 19 and 20 govern the addition of a person as a party to a counterclaim or crossclaim." Thus, Peterson's addition to the case would be governed by the rules of joinder rather than impleader. Under Rule 19(a)(1)(A), joinder is required if "in that person's absence, the court cannot accord complete relief among existing parties." Read charitably, the statement that assertion of the counterclaims "is necessary to a fair and equitable understanding of the merits of the Defendants-in-Counterclaim," Dkt #119 at 2, attempts to satisfy this standard. Because the counterclaims against B2 and Peterson are identical in substance, however, the court sees no need to analyze them separately.

matter of judicial discretion," guided by the general need to "balance the interests of judicial economy and the general policy of avoiding multiple suits relating to the same events against the possibilities of prejudice or surprise to the other parties." Charles Alan Wright et al., *Federal Practice & Procedure* § 1431.

The court thus proceeds to the question at hand: should the Trabelsi Defendants be granted leave to assert their counterclaims against B2 and Peterson, and their crossclaims against Lloyd? In general, leave to amend is to be freely granted. Fed. R. Civ. P. 15(a)(2). Yet the court is under no obligation to grant requests to amend that would be futile because they fail to state a claim that could survive a motion to dismiss under Rule 12(b)(6). *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 132 (1st Cir. 2006); *see Travelers Indem. Co. v. Damman & Co.*, 594 F.3d 238, 243 (3d Cir. 2010) (applying futility analysis to a proposed crossclaim). That is patently the case here. Based on eight paragraphs of sparse factual allegations, the Trabelsi Defendants assert six claims — one against B2 and Peterson (breach of contract), one against Lloyd (malpractice), and four against B2, Peterson, and Lloyd collectively (breach of the implied covenant of good faith and fair dealing, violations of Chapter 93A, unjust enrichment, and misrepresentation).

7

The Trabelsi Defendants' asserted claims rely on several woefully deficient allegations. To begin, they are tied to a "contract" which appears to be a letter of interest describing a putative agreement by which a Nevada corporation called Mazzal Holdings, Inc., would acquire all of the shares of three other companies. Dkt #112-1. The only explicitly binding features of the letter relate to matters such as confidentiality, and the Trabelsi Defendants make no claims for breach of those provisions. Of course, a preliminary agreement can amount to a binding contract under certain circumstances, *see Midtown Realty, Inc. v. Hussain*, 712 So. 2d 1249, 1251-1252 (Fla. Dist. Ct. App. 1998)[4]; *Hunneman Real Estate Corp. v. Norwood Realty, Inc.*, 54 Mass. App. Ct. 416, 421 (2002), but no facts are alleged to support the enforceability of the entire letter of interest. In addition, B2 and Peterson are not directly parties to the agreement, and no information is provided to explain how they could be bound by it.

Even assuming the letter of interest is a contract binding B2 and Peterson, the allegations about a breach are conclusory at best. The only allegation is that B2 and Peterson "breached the contract by forcing Nissim to sign other agreements and then[] by filing this [suit]." Several counts repeat the general allegation that Peterson "forced" or "coerced" Nissim into

---

[4] The letter of intent contains a Florida choice of law clause.

making changes to the contract. Precisely how Nissim was "forced" to do anything is unclear; other than allegations about three emails and three telephone calls Peterson made "demanding" changes to the agreement, nothing is pled to support a viable legal claim on any of the Trabelsi Defendants' counts. It is not even clear that all three sets of contacts demanded changes to the same agreement, a mystery deepened by the fact that none of the exhibits referenced in the proposed claims support the key allegations. Exhibit B, for example, cited to illustrate the first coercive email and phone call from Peterson, is a term sheet outlining a stock purchase agreement and contains no copies of emails or any other documentation supporting an inference of coercion. Dkt #112-2.

The other theory that the Trabelsi Defendants table in various claims is that B2 and Peterson misled him by failing to disclose that Peterson was the subject of a complaint by the Florida Office of Financial Regulation and that he "was not authorized to act as a financial consultant" or covered by malpractice insurance. Yet the Trabelsi Defendants plead nothing to explain why Peterson's status was material to the deal they negotiated, nor does he allege that he relied on Peterson's representations or omissions. *See Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co.*, 445 Mass. 411, 423 (2005) (party must rely on a material misrepresentation to make out a claim

of fraudulent or intentional misrepresentation); *Marram v. Kobrick Offshore Fund, Ltd.*, 442 Mass. 43, 59 (2004) ("[J]ustifiable reliance is integral to a claim of negligent misrepresentation.").

The Trabelsi Defendants' remaining three claims against B2 and Peterson merge these strands of allegations, but each fails. Without allegations supporting a misleading statement or something more than a simple breach of contract, the 93A claim is futile. *See Marram*, 442 Mass. at 62 ("[A] negligent misrepresentation may be so extreme or egregious as to constitute a violation of" Chapter 93A); *Mass. Emprs. Ins. Exchange v. Propac-Mass, Inc.*, 420 Mass. 39, 43 (1995) ("[A] breach of contract alone does not amount to an unfair act or practice under [Chapter 93A]. . . ."). The claim for breach of the covenant of good faith and fair dealing likewise fails. The covenant applies to completed agreements, and thus does not cover the Trabelsi Defendants' allegation that Peterson and B2 "lured" Nissim into a deal despite knowing that Peterson was not a financial consultant. Moreover, without allegations beyond the conclusory assertion that Peterson "forced Nissim to sign amended Agreements" to supplant the original contract, no breach of the covenant is shown. *See Eigerman v. Putnam Invs., Inc.*, 450 Mass. 281, 287-288 (2007) (covenant exists to protect the reasonable expectations of the parties to a contract). Finally, the unjust

enrichment claim is hopeless without further allegations about what, if any, performance beyond the terms of the alleged contract Peterson and B2 demanded. *See Metro. Life Ins. Co. v. Cotter*, 464 Mass. 623, 641 (2013).

The claims against Lloyd are likewise futile.[5] The covenant of good faith and fair dealing claim rests on the same faulty allegations as the claims against B2 and Peterson; there are no facts alleged to support the assertion that Lloyd, any more than B2 or Peterson, "lured" Trabelsi into a trap, or that Lloyd was in any way involved in subsequent efforts to thwart the Trabelsi Defendants' enjoyment of the contract. The misrepresentation claims collapse for the same reason: no facts are alleged to suggest that Trabelsi relied on any material misstatements or omissions by Lloyd.

Finally, the malpractice claim against Lloyd is baffling. The central allegation is that Lloyd negligently prepared the alleged contract, that it "did not accomplish the desired goals," and that Lloyd should have revised the contract before advising Nissim to sign it. The "goals" this contract did not "accomplish" are never identified. This is all the more confusing given that the Trabelsi Defendants' claims assert that B2 and Peterson coercively

---

[5] The court can, for the moment, bypass Lloyd's argument that the court lacks personal jurisdiction over him. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007); *McBee v. Delica Co.*, 417 F.3d 107, 127-128 (1st Cir. 2005).

11

attempted to alter the terms of the contract. The same allegations undergird the Chapter 93A claims against Lloyd, and are deficient for the same reasons. The motions to strike will therefore be granted, and the motion for leave to add Peterson as a party will be denied.

ORDER

For the foregoing reasons, B2 and Lloyd's motions to strike (Dkt #113, #126) are <u>GRANTED</u>. The Trabelsi Defendants' motion for leave to add Peterson as a party (Dkt #119) is <u>DENIED</u>.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE